**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

---

JAMES USELDING,

Plaintiff,

v. Case No.: 2:26-cv-1713

T-MOBILE USA, INC.;
CHRIS BRIDGES;
BEN DICKSON; and
ALECIA RICHARDSON,

Defendants.

---

# COMPLAINT

---

Plaintiff, James Uselding, through his undersigned attorneys brings the following Complaint against Defendants, T-Mobile USA, Inc., Chris Bridges, Ben Dickson and Alecia Richardson:

## NATURE OF CASE

1. Plaintiff, James Uselding, alleges that his former employer, T-Mobile USA, Inc., and its supervisory personnel, Chris Bridges, Ben Dickson and Alecia Richardson, violated the Family and Medical Leave Act of 1993, ("FMLA") [29 U.S.C. § 2601, et seq.] by interfering with his right to take FMLA leave and terminating his employment because he exercised his FMLA rights.

## JURISDICTION AND VENUE

2. Jurisdiction over Uselding's claims under the Family and Medical Leave Act of 1993 [29 U.S.C. §§ 2601-2654] is conferred on this Court by 29 U.S.C. § 2617(a)(2).

3. The proper federal venue for this action pursuant to 28 U.S.C. § 1391 is the Eastern District of Wisconsin where a substantial part of the events or omissions giving rise to Plaintiff's claim occurred.

**CONDITIONS PRECEDENT**

4. All conditions precedent to this action within the meaning of Rule 9(c), Fed. R. Civ. P. have been performed or have otherwise occurred.

**JURY DEMAND**

5. James Uselding demands that his case be tried to a jury of his peers.

**PARTIES**

6. Plaintiff James Uselding ("Uselding") is an adult citizen of Wisconsin, domiciled at W126N11975 Forest Hill Rd., Germantown, WI 53022.

7. Defendant T-Mobile USA, Inc. ("T-Mobile") is incorporated under the laws of the State of Delaware, and at relevant times continuously had and does now have at least fifty (50) employees within 75 miles of Uselding's worksite in the current or preceding calendar year and is an "employer" engaged in commerce within the meaning of 29 U.S.C. § 2611(4). T-Mobile has administrative offices located at 12920 SE 38th Street, Bellevue, WA 98006 and a registered agent at Corporation Service Company, 33 East Main Street, Ste. 610, Madison, WI 53703.

8. Defendant Chris Bridges ("Bridges") is an adult who, at relevant times, was employed by T-Mobile as Uselding's Sales Manager. Bridges acted directly or indirectly in the interest of T-Mobile with respect to Uselding, exercised operational control over Uselding's employment, had supervisory authority over Uselding, is an "employer" under 29 U.S.C. § 2611(4)(A)(ii)(I), and was responsible in whole or part for the violation of Uselding's FMLA rights.

9. Defendant Ben Dickson ("Dickson") is an adult who, at relevant times, was employed by T-Mobile as Uselding's Sales Director. Dickson acted directly or indirectly in the interest of T-Mobile with respect to Uselding, exercised operational control over Uselding's employment, had supervisory authority over Uselding, is an "employer" under 29 U.S.C. § 2611(4)(A)(ii)(I), and was responsible in whole or part for the violation of Uselding's FMLA rights.

10. Defendant Alecia Richardson ("Richardson") is an adult who, at relevant times, was employed by T-Mobile as Uselding's Human Resources Business Partner. Dickson acted directly or indirectly in the interest of T-Mobile with respect to Uselding, exercised operational control over Uselding's employment, had supervisory authority over Uselding, is an "employer" under 29 U.S.C. § 2611(4)(A)(ii)(I), and was responsible in whole or part for the violation of Uselding's FMLA rights.

## OPERATIVE FACTS

11. Uselding commenced employment with T-Mobile on or around January 2, 2023, and most recently held the position of Enterprise Account Executive.

12. Uselding's position was approximately 95% remote. He worked from home and conducted business by phone, email, and videoconference. In-person customer meetings were required only occasionally, amounting to no more than two hours per week, and usually less.

13. Uselding's most recent performance review, in December 2025, rated his performance as average or better.

14. Uselding worked more than 1,250 hours during the twelve months preceding the leave described below.

15. As of the leave described below, Uselding had been employed by T-Mobile for more than 12 months.

16. On or about January 28, 2026, Uselding was taken to the emergency room and admitted to the intensive care unit with nonischemic cardiomyopathy and heart failure. He was hospitalized for three days, from January 28 through January 30, 2026, during which he underwent an MRI, an echocardiogram, and further testing.

17. Upon discharge, Uselding was required to wear a defibrillator life vest for a minimum of 90 days, was prescribed eight different daily medications, and was ordered to complete 12 weeks of cardiac rehabilitation.

18. Uselding's heart condition is chronic, causes him episodic incapacity, requires continuing treatment, and his leave from work related to the condition is a medical necessity, constituting a "serious health condition" within the meaning of 29 U.S.C. § 2611(11).

19. On the recommendation of his primary care physician, Dr. Wyatt Chicone, Uselding took leave beginning in early February 2026 to allow his heart to recover, reduce stress, and complete cardiac rehabilitation. T-Mobile approved this leave.

20. On June 1, 2026, Uselding's cardiologist, Dr. Claire Dohman, found significant improvement in his heart function, reduced his daily medications, and cleared him to return to work.

21. Uselding returned to work from his leave on or about June 15, 2026.

22. On or about June 16, 2026, Uselding applied for and was approved by T-Mobile for intermittent leave, designated by T-Mobile as "T-Mobile Accommodation Leave," for the period June 16, 2026 through December 15, 2026, allowing him approximately one day per month off for medical appointments or illness related to his heart condition or medications.

23. Defendants were therefore fully aware, at all relevant times, of Uselding's serious health condition, his need for medical leave, and his approved, ongoing intermittent leave, and Uselding's approved intermittent leave took effect the same day Defendants first disciplined him, as set forth below.

24. In December 2025, before Uselding's medical leave began, Uselding was issued a citation for an off-duty traffic offense that occurred entirely outside of work, while he was off duty and driving his own personal vehicle. The incident had no connection to Uselding's job performance or his ability to perform his duties, and Defendants took no adverse action against Uselding regarding it for approximately six months.

25. On May 27, 2026, while Uselding remained on his approved medical leave, Uselding resolved the citation, and on June 10, 2026 the State of Wisconsin entered judgment, resulting in a driver's license suspension that took effect on or about June 15, 2026, the same day Uselding returned to work from his leave. Uselding promptly obtained an occupational license permitting him to drive up to 60 hours per week, which was far more than sufficient to cover the approximately two hours per month of in-person customer meetings his position required. Uselding also had ready access to ride-share services.

26. On June 16, 2026, Uselding's second day back at work following his leave, his Sales Manager, Chris Bridges, presented Uselding with disciplinary paperwork concerning the citation and resulting license suspension described above, notwithstanding that the underlying incident was unrelated to Uselding's job performance and unrelated to his medical leave.

27. On July 6, 2026, Uselding's Sales Director, Ben Dickson, called a meeting with Uselding regarding the same matter. Uselding explained to Dickson that he held an occupational license permitting him to drive 60 hours per week, that he is primarily a remote worker, and that

the suspension would not affect his ability to perform his job in any way. Dickson stated that he would advocate on Uselding's behalf but that the decision was up to Human Resources.

28. Approximately 30 minutes after that meeting, Defendants informed Uselding that he was required to find a non-driving role within the organization within two weeks or he would be terminated; that he was being placed on an immediate two-week unpaid leave; and that his last day would be July 20, 2026 if he could not find a new role. Defendants further informed Uselding that all of his systems access would be shut off within 24 hours.

29. On July 7, 2026, Uselding spoke with T-Mobile HR representative Alecia Richardson and again explained that he is a remote worker who infrequently meets with customers in person, that he holds an occupational license permitting him to drive up to 60 hours per week, and that the suspension would not affect his ability to perform his job. Richardson responded that this was the company's decision, and that the two weeks were "a courtesy." Defendants did not engage in any further discussion of these facts or of any accommodation.

30. On or about July 7, 2026, T-Mobile disabled all of Uselding's systems access. He could not access his computer, could not email anyone within the organization, and could not apply for any internal positions as an internal candidate, making the purported opportunity to find a non-driving role illusory.

31. Defendants' own June 16, 2026 discipline barred Uselding from any promotion or job transfer for 90 days, until September 10, 2026, directly contradicting and defeating Defendants' subsequent demand that Uselding transfer to a new role by July 20, 2026.

32. Uselding's termination was scheduled for on or about July 20, 2026.

33. At the time Defendants placed him on unpaid leave and scheduled his termination, Uselding had FMLA leave available to him under his approved intermittent leave schedule, which ran through December 15, 2026.

34. Defendants' stated rationale for disciplining Uselding, placing him on unpaid leave, and scheduling his termination (that his license suspension prevented him from performing his job) is false and pretextual. Uselding's position was approximately 95% remote and required no more than approximately two hours per month of in-person customer meetings; his occupational license permitted him to drive up to 60 hours per week, far more than sufficient to cover those infrequent in-person duties; he had ready access to ride-share services; and driving was not an essential function of his position. Uselding communicated each of these facts to Bridges, Dickson, and Richardson, yet Defendants refused to engage in any good-faith discussion of them or of any accommodation.

35. Defendants' pretext is further shown by their own internal contradiction: the same June 16, 2026 discipline that purportedly justified requiring Uselding to transfer to a new role also barred him, for 90 days, from the very promotion or transfer Defendants then demanded he complete within two weeks, while simultaneously cutting off his systems access so that he could not even apply for an internal position. These self-defeating conditions made continued employment impossible and reveal that Defendants' stated reason was not the true reason for their actions.

36. Defendants' pretext is also shown by the timing and sequence of events. Defendants took no adverse action against Uselding during the approximately six months between the December 2025 citation and his return from FMLA-qualifying leave in June 2026, even though the citation and the resulting license proceedings were pending and known to Uselding throughout

that period. Instead, Defendants waited until Uselding's second day back from serious-health-condition leave when his approved intermittent FMLA leave took effect, to first discipline him, and then, within three weeks, to place him on unpaid leave and schedule his termination. This suspicious timing, together with the falsity of Defendants' stated rationale, demonstrates that Uselding's exercise of his FMLA rights, and not his license suspension, was the true reason for Defendants' actions.

37. Defendants took materially adverse actions against Uselding by disciplining him, denying him a meaningful opportunity to transfer, placing him on unpaid leave, disabling his systems access, and scheduling his termination within three weeks of his return from FMLA leave and immediately after his approved intermittent FMLA leave took effect, because Uselding exercised his FMLA rights, and not for the pretextual reason Defendants have advanced.

38. Uselding's protected conduct was a substantial or motivating factor in Defendants' decisions to discipline him, deny him a meaningful opportunity to transfer, place him on unpaid leave, and schedule his termination.

**FIRST COUNT**
**FMLA INTERFERENCE § 2615(A)(1)**

39. As and for a first Count, Uselding re-asserts the allegations recited above and fully incorporates those paragraphs herein by reference.

40. Defendants deprived Uselding of FMLA entitlement in violation of 29 U.S.C. § 2615(a)(1) on the basis that he was eligible for the FMLA's protections, T-Mobile was covered by the FMLA, Uselding was entitled to leave under the FMLA, he provided sufficient notice of his intent to take FMLA leave, and Defendants denied him FMLA benefits to which he was entitled.

41. Defendants discriminated against Uselding by disciplining him for matters unrelated to his medical leave immediately upon his return from leave, denying him equivalent

work opportunity, subjecting him to conditions that made continued employment and use of his approved intermittent leave impossible, and interfering with Uselding's statutory entitlements.

42. Defendants' proffered reason for their actions (that Uselding's license suspension prevented him from performing his job) is pretextual for the reasons set forth above, and does not excuse Defendants' denial of Uselding's FMLA rights.

43. The allegations more particularly described above regarding the intentional discriminatory practices of Defendants were not made with good faith or reasonable grounds for believing that the conduct did not violate the Family and Medical Leave Act of 1993, [29 U.S.C. § 2601, et seq.]

44. The allegations more particularly described above caused Uselding wage loss, benefits loss, and expenses, all to his damage.

**SECOND COUNT**
**FMLA RETALIATION § 2615(A)(2)**

45. As and for a second Count, Uselding re-asserts the allegations recited above and fully incorporates those paragraphs herein by reference.

46. Defendants violated 29 U.S.C. § 2615(a)(2) by taking the materially adverse actions of disciplining Uselding, denying him a meaningful opportunity to transfer, placing him on unpaid leave, and terminating his employment because of his FMLA-protected activity.

47. Defendants' proffered non-retaliatory reason for their actions (Uselding's license suspension) is pretextual for the reasons set forth above, and but for Uselding's exercise of his FMLA rights, Defendants would not have disciplined him, denied him a meaningful opportunity to transfer, placed him on unpaid leave, or scheduled his termination.

48. The allegations more particularly described above regarding the intentional discriminatory practices of Defendants were not made with good faith or reasonable grounds for

believing that the conduct did not violate the Family Medical Leave Act of 1993 [29 U.S.C. § 2601, et. seq.].

49. The allegations more particularly described above caused Uselding wage loss, benefits loss, and expenses, all to his damage.

WHEREFORE, Plaintiff, James Uselding, demands relief as follows:

a) Damages equal to the amount of wages, employment benefits, and other compensation denied or lost by reason of the FMLA violation pursuant to 29 U.S.C. § 2617;

b) The interest on said damages calculated at the prevailing rate pursuant to 29 U.S.C. § 2617;

c) Equitable relief as may be appropriate, including employment, reinstatement, and promotion pursuant to 29 U.S.C. § 2617;

d) A reasonable attorney's fee pursuant to 29 U.S.C. § 2617;

e) Reasonable expert witness fees pursuant to 29 U.S.C. § 2617;

f) Costs of the action pursuant to 29 U.S.C. § 2617;

g) An additional amount as liquidated damages equal to the sum of damages and interest pursuant to 29 U.S.C. § 2617; and

h) Such other relief as the court deems just and equitable.

Dated this 20th day of September, 2026.

_Electronically signed by Alan C. Olson_
Alan C. Olson, SBN: 1008953
Nicholas O. Yurk, SBN: 1095278
Attorneys for Plaintiff
Alan C. Olson & Associates, S.C.
2880 S. Moorland Rd.
New Berlin, WI 53151
Telephone: (262) 785-9606
Fax: (262) 785-1324
Email: AOlson@Employee-Advocates.com